In the matter of the judicial settlement of Adolph Knab, administrator of Gustave Knab. Objections to account overruled.

Jacob Stern, for administrator.
Frank C. Brendel, for Louisa Schamel.
Stolting & Heath, for Mary Neussle.
William B. Frye, for Mary Knab and Emma Knab.

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 901.

MARCUS, S. Gustave Knab died intestate, leaving, him surviving, Mary Knab, his mother, and Emma, David, and George Knab, his only sister and brothers, and Mary Neussle and Louisa Schamel, his half-sisters. The brother David Knab was appointed administrator of this estate. It appears that the estate consists of $4,760.94, which represents the proceeds of a policy of insurance upon the decedent's life which was made payable to his legal representative, and some stock and personal effects valued at $150. The account of the administrator shows that Emma Knab presented a claim for $1,048.39, which the administrator allowed in full as a valid claim against the deceased. It also shows that Mary Knab, the mother of the decedent, presented a claim for $4,039.34, which the administrator allowed in full as a valid claim against the deceased. It further shows that the funeral and administrator's expenses amounted to the sum of $283.07. Upon the face of the account, the personal property of the decedent will not be sufficient to pay the funeral and administration expenses and the foregoing claims mentioned, in full. The half-sisters, Mary Neussle and Louisa Schamel, objected to the claims of Mary Knab and Emma Knab, as allowed by the administrator, upon the grounds that the same were excessive, and not valid claims against the estate of the deceased. The account and the objections thereto were sent to Mr. Adolph Rebadow, to take and report the evidence upon the facts relating to the claims of Emma Knab and Mary Knab, and to hear and determine all questions arising upon such claims. Objections were made by the contestants before the referee on the ground that a portion of these claims was barred by the statute of limitations. The referee made his report, finding the claims were duly presented to said administrator, and that he allowed the same, and decided that they were valid and subsisting claims against the deceased, and should be paid. I conclude, from a careful reading of the testimony and report, that the referee held that the burden of establishing the validity of so much of the claims as appear upon their face to be barred by the statute of limitations was upon the administrator, and that the burden of establishing the invalidity of so much of the claims as appear not to be barred by the statute of limitations was upon the contestants.

The questions arising for consideration are: First. Whether upon an accounting a claim allowed by an administrator, and not paid, stands upon an equal footing with a claim allowed and paid. Second. Upon an accounting, does the burden of establishing the validity of a claim allowed, but unpaid, bearing on its face items barred by the statute, rest with the administrator? Third. Upon an accounting, does the burden of establishing the validity of a claim, allowed but unpaid, regular upon its face, fall upon the contestants or upon the administrator?

In re Warrin, 56 App. Div. 414, 67 N. Y. Supp. 763, settles the first question. In that case the appellate division of the First department held that where the claim is allowed, although unpaid, the party attacking such claim assumes the burden of establishing its invalidity.

The second question is not free from doubt. The Warrin Case seems to hold that a claim, even though barred by the statute of limitations, when allowed by the administrator, should be treated as

any other claim not barred. It is the duty of an administrator to set up the statute of limitations against any claim or a portion of a claim barred by the statute, and when a claim or part of a claim is allowed, which on its face is so barred by the statute, the administrator ought to be required to satisfy the objecting parties and the court that the question of the statute was considered before making such an allowance. A claim which upon its face appears to be, in whole or in part, barred by the statute, may nevertheless be allowed, if the facts and circumstances surrounding the claim are such that the statute could not be successfully raised against the claim. In the Warrin Case the court presumed that payments were made, and, if that decision is correct, then it follows that the court may indulge in the presumption that facts and circumstances were presented to the administrator which justified the allowance of such a claim. If it is conceded that the ruling of the referee in this regard be erroneous, and that the burden is on the administrator of proving the validity of such portions, and such of those claims which seem to be on their face outlawed, yet there is sufficient evidence in this case to warrant the finding and decision of the referee. The proof shows that facts and circumstances existed and were known to the administrator. The evidence presented to the referee was given by the administrator himself and David Knab; also the account of the administrator and the claims as presented. The administrator and David Knab are next of kin, and the allowance of these claims entirely wipes out their interest in the estate of the decedent. These witnesses were called in behalf of the administrator. Their evidence was competent notwithstanding the objections which the contestants urged under section 829 of the Code, and this is so in the case of David Knab, who was one of the sureties on the bond of the administrator. The administrator testified: That he allowed the claims after an examination and consultation with his attorneys, and because he had a personal knowledge of nearly all of the items. That the decedent desired to become a civil engineer. That he commenced the course of study for that profession at Cornell University, and soon thereafter his father died. That the decedent wanted to continue his course of study. That in the family talk had in the presence of the claimants, the administrator, and the said David Knab, soon after the father's death, the deceased stated that he would like to go to college, and the claimants replied that they would give him the money if he would pay it back again, and the decedent said he would if he could, and thereafter took out insurance, so that if he was killed on the road, or if anything happened, they would be sure of their money; that they would get interest on the same. At the same time the decedent told them he would pay them when he was able,—when he got through with school; that it would cost quite a bit to finish up, as he was put back in his studies on account of his father's death. He also told them he would pay it back when he earned the money, and that he would get a good job when he got through. The administrator further testified that the decedent went to Cornell University, and afterward to Ann Arbor University, and that he finished his education about a year before he was killed; that

he died on August 21, 1900; and that the insurance he took out upon his life was taken out in 1895. The testimony of David Knab corroborates the statement of the administrator in relation to the conversation which took place between the claimants and the decedent soon after the father's death. The decedent at this time told his mother and sister that, if they would let him have the money, as soon as he got to earning money he would pay it back, with interest; that after he got the trade learned he could earn "big pay"; that it was a good trade, and he could earn lots of money, and then he would pay it back. That in 1895 the administrator and the deceased compared the books of the claimants and the decedent, wherein was kept an account of the moneys loaned to the deceased, and the books were found to agree. That the decedent then said that the account was right, and that he wanted the folks to be sure of their money; that he wanted to take out some insurance, and, if anything should happen, he wanted his mother and sister who loaned him the money to be sure that they would get it back; that after he got through school he would get a good position, and it would not take long to earn that money; and that he wanted to repay those amounts, with interest. In Tebo v. Robinson, 100 N. Y. 27, 2 N. E. 383, it was held that a cause of action will not accrue under a promise to pay the amount when able, until the defendant had the pecuniary ability to pay the debt. That decision seems to cover the case at bar. The decedent did not begin to earn any money out of which he could pay this indebtedness until some time in 1900.

It appears that Emma Knab, one of the claimants, has an item in her account of $179, which represents moneys advanced for the purpose of bringing home the remains of the deceased from the West to the place of burial, together with an item of $3.58 of interest thereon. These items, while allowed by the referee, are not, strictly speaking, a claim against the deceased, but are a part of the funeral expenses, and may be allowed as part of such.

It follows from the foregoing views that the report of the referee should be confirmed, and a decree may be entered accordingly. Decreed accordingly.